**HATZLACHH SUPPLY INC., Petitioner,**

v.

**MOISHE'S ELECTRONICS, INC., Respondent.**

**90 Civ. 2537 (KTD).**

United States District Court, S.D. New York.

March 4, 1993.

Sol Mermelstein, Brooklyn, NY (Sol Mermelstein, of counsel), for petitioner.

Fulbright & Jaworski, New York City (K. Jane Frankhanel, of counsel), for respondent.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Hatzlachh Supply Inc. ("Hatzlachh") petitions this court under the Federal Arbitra-

tion Act, 9 U.S.C. § 4, to compel arbitration with respondent Moishe's Electronics Inc. ("Moishe's"). Petitioner also seeks an order or judgment, pursuant to 28 U.S.C. § 2283, enjoining and staying the Texas state court action commenced by the respondent. Upon the affidavits and memoranda submitted by the parties, the petition to compel arbitration is granted.

## Background

Petitioner Hatzlachh is a New York corporation engaged in the manufacturing, importing and selling of electronic merchandise, with its principal place of business in New York. Respondent Moishe's is a Texas corporation in the business of exporting electronic merchandise to Mexico, with its principal place of business in Texas. The respondent began purchasing goods from petitioner approximately two years ago. Prior to this proceeding, respondent and petitioner entered into approximately 42 transactions for a total dollar amount of approximately $1.85 million.

All of the business transactions between the parties involve the respondent telephoning the petitioner in New York to purchase electronic merchandise. The petitioner would then prepare an invoice and send it by facsimile transmission to the respondent in Texas on the day or the day after the oral purchase order. Each invoice set forth the prices and quantities of the merchandise ordered, and included an arbitration provision on the face of the invoice, located at the bottom set forth in capital letters. In connection with the facsimile transmission sent to the respondent, petitioner would also send a facsimile transmission to the warehouse where the goods were stored, authorizing the release of the merchandise to the respondent.[1] The respondent would then arrange to pick up the merchandise at the warehouse via tractor-trailer.

In each of the forty-two transactions that preceded the transactions at bar, the invoices

sent to the respondent by facsimile transmission included an arbitration clause on the face of the invoice. Prior to this petition, the respondent never objected to any of the terms of the invoices.

The instant dispute arises out of two transactions occurring on or about January 29, 1992, and January 30, 1992. The sequence of events outlined above also occurred with respect to the two transactions at bar. Focusing on the first transaction, the respondent telephoned the petitioner on or about January 29, 1992 to order 535 video cassette recorders; 300 13-inch remote color televisions; 1,000 5-inch black and white televisions am/fm radio combination; and, 152 19-inch remote color televisions in the total amount of $200,253.50. Petitioner prepared invoice number 10222 dated January 29, 1992 and sent it by facsimile transmission from petitioner's New York office to respondent in Texas on January 29, 1992.

With respect to the second transaction, the respondent telephoned petitioner on or about January 30, 1992, and ordered an additional 95 13-inch remote color televisions in the amount of $15,290. Similarly, petitioner prepared invoice number 10241 dated January 31, 1992 and sent it by facsimile transmission to respondent in Texas on February 3, 1992.

The invoices in question each contained an arbitration provision on the face of the invoice, located at the bottom in capital letters. The arbitration provision provided as follows: "ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS SHIPMENT OR ANY ORDER UNDER WHICH GOODS WERE SHIPPED SHALL BE SETTLED BY ARBITRATION IN NEW YORK CITY IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK."

On or about January 29, 1992, respondent dispatched an empty tractor-trailer to the warehouse to pick up the merchandise for export to Mexico. The merchandise was loaded onto the respondent's trailer on or

---

1. Petitioner's goods were being held "in-bond" at the warehouse. Merchandise held "in-bond" means that it arrived in the United States from another country and is being held in a facility for shipment to locations outside of the United States. *See* Respondent's Memorandum of Law In Opposition to Petitioner's Motion for an Order Compelling Arbitration and the Stay of a Texas State Court Action ("Res.Mem.") at 2 n. 3.

about January 30, 1992. However, the respondent determined that it was too late to export the merchandise to Mexico and decided to transport the merchandise at a later time.

In the interim, the trailer, loaded with the electronic merchandise, remained in a parking lot outside of the warehouse. On or about February 6, 1992, the respondent was notified that the trailer, along with the merchandise, was the subject of a theft. The trailer was subsequently discovered on some side road completely empty. Thereafter, the respondent failed to pay the petitioner for the merchandise that was stolen out of the trailer.

The respondent did not object to the terms of the invoices in question until February 24, 1992.[2] By letter, dated February 24, 1992, respondent rejected petitioner's right to arbitrate, claiming that arbitration was not discussed when the order was placed. Additionally, on February 24, 1992, the respondent commenced a lawsuit against Hatzlachh in the 138th District Court of Cameron County Texas under Cause Number 92–02–1064–B (the "Texas State Court Action").[3]

On or about March 24, 1992, Hatzlachh interposed an answer in the Texas State Court Action generally denying the allegations and raising the affirmative defense that the complained of controversy is governed by an arbitration provision. Also on or about March 24, 1992, Hatzlachh filed a Plea in Abatement in the Texas State Court Action, requesting that the Texas action be abated pending arbitration in New York, or in the alternative, seeking a motion to dismiss. On or about March 26, 1992, Hatzlachh withdrew its motion to dismiss in the Texas State Court Action. Thereafter, on or about April 8, 1992, petitioner Hatzlachh commenced this action seeking to compel arbitration in New York and to stay the Texas State Court Action.

## Discussion

■ The Federal Arbitration Act (the "Act"), 9 U.S.C. §§ 1–16, applies in federal diversity actions where the arbitration provision being construed is in writing and the action relates to a contract evidencing a transaction involving interstate commerce. 9 U.S.C. §§ 1, 2; see Threlkeld v. Metallgesellschaft, 923 F.2d 245, 249 (2d Cir.), cert. dismissed, —— U.S. ——, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991).

Clearly, the case at bar is cognizable under the Federal Arbitration Act: (1) the sale of the merchandise over interstate lines constitutes interstate commerce; (2) the arbitration provision at issue is in writing; and, (3) diversity of citizenship exists between the parties, pursuant to 28 U.S.C. § 1332(a)(1).[4]

The petitioner bases its motion to compel arbitration upon section 4 of the Act. Section 4 provides, in pertinent part, that:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided by such agreement.

9 U.S.C. § 4.

■ In deciding a motion to compel arbitration, the court must determine: (1) whether there is an agreement to arbitrate; (2) whether the claim falls within the scope of the agreement; and, (3) whether the right to arbitrate has been waived. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d

---

2. It should be noted that the respondent never objected to the terms of the 42 identical invoices received prior to this action.

3. In the Texas State Court Action, respondent Moishe's alleges four causes of action against the petitioner Hatzlachh, including: (1) breach of contract; (2) declaratory relief of the rights and obligations of the parties; (3) negligence on the part of the defendant Hatzlachh; and, (4) negligence on the part of defendant's agent, the warehouse customs broker. Respondent Moishe's also seeks attorney's fees in connection with the prosecution of the Texas State Court Action.

4. Section 1332 provides, in pertinent part, as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States.

28 U.S.C. § 1332(a)(1) (Supp.1992).

Cir.1987) (citing *Mitsubishi Motors v. Soler Chrysler–Plymouth,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)); *Brener v. Becker Paribas, Inc.,* 628 F.Supp. 442, 447 (S.D.N.Y.1985).

■ Although the Act "creates a body of federal substantive law of arbitrability," *see Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), the Act "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *See Volt Information Sciences, Inc. v. Board of Trustees,* 489 U.S. 468, 477, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989) (citing *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956)). Instead, section 2 of the Act "preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate." *See Cook Chocolate Co. v. Salomon, Inc.,* 684 F.Supp. 1177, 1182 (S.D.N.Y.1988). "Thus, state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Perry v. Thomas,* 482 U.S. 483, 492–93 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987). Accordingly, I will apply state law principles to the issue of whether these parties actually agreed to arbitrate their disputes.

■ It should be noted, however, that section 2 of the Act also operates to preempt state statutory and case law "to the extent that it actually conflicts with federal law— that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255 (citing *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).

■ The case before this court is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1). A federal court sitting in diversity must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, I must look to New York's conflict of law rules to determine which body of state law contract principles applies. The transactions at issue in the instant case involve the sale of goods. Both New York and Texas have adopted Article 2 of the Uniform Commercial Code ("UCC") governing the sale of goods.[5] The provisions of the UCC are regarded as generally accepted principles of contract law and, as such, are applicable to the instant action. *See Filanto v. Chilewich Int'l Corp.,* 789 F.Supp. 1229, 1237 (S.D.N.Y.1992). The versions of the UCC as adopted in New York and Texas with respect to the particular provisions that apply in this case, are similar in all relevant respects. Therefore, the choice of law issue, at this juncture, is largely irrelevant. Thus, I will cite to both New York and Texas law.

The gravamen of the instant case is not whether a contract exists,[6] rather the dispute focuses on what constitutes the specific terms of the contract. Thus, the question that needs to be answered is whether the arbitra-

---

**5.** *See* New York Uniform Commercial Code (McKinney's 1964 & Supp.1993) [hereinafter referred to as "NYUCC"]; Texas Business & Commerce Code (1993) [hereinafter referred to as "Tex.Bus. & Com.Code"].

**6.** Respondent Moishe's does not dispute the existence of a contract for the sale and purchase of electronic merchandise. Clearly, this is evidenced by the fact that the respondent brings a cause of action for breach of contract in the Texas State Court Action. *See* Galonsky Affidavit, dated May 6, 1992, at Exh. B.

It should be noted that under UCC § 2–201 an oral contract would not be enforceable in the absence of a writing or part performance because the orders in question involved more than $500 in goods. NYUCC § 2–201(1); Tex.Bus. & Com.Code § 2.201(a). However, in contracts between merchants, if within a reasonable time after an oral agreement, one party sends a written confirmation to the other party, it will bind the recipient if: (1) the party has reason to know of the confirmation's content; and, (2) the party does not object within ten days. NYUCC § 2–201(2); Tex.Bus. & Com.Code § 2.201(b).

Certainly, the respondent had reason to know the content of the invoices. For approximately two years, the respondent has received 42 identical invoices prior to this action. Furthermore, the respondent failed to object to the terms of the invoices in question within ten days.

tion provision included on the face of the invoice is part of the agreement between the parties.

Section 2–207 of the UCC governs disputes involving the addition of terms in written confirmations. Specifically, section 2–207 provides that, as between merchants, additional terms included in a written confirmation will not become part of the contract if: (1) the offer expressly limits the acceptance to the terms of the offer;[7] (2) they materially alter it; or (3) notification of objection to them has been given or is given within a reasonable time. NYUCC § 2–207(2); Tex. Bus. & Com.Code § 2.207(b).

Turning to the instant case, respondent claims that the petitioner's inclusion of the arbitration clause in the invoices "clearly constituted an 'additional term' which would 'materially alter' the agreement between the parties as per Tex.Bus. & Com.Code sec. 2.207(b)(2)."[8] Res.Mem. at 11 n. 7. Respondent further asserts that, under the New York rule, the addition of an arbitration provision constitutes a *per se* material alteration. *Id.* at 15.

Petitioner, on the other hand, maintains that the respondent was obviously aware of the arbitration provision and should be bound by it because for over 17 months the parties engaged in 42 transactions, each of which involved an invoice containing a similar arbitration provision to which the respondent never objected. Petitioner's Memorandum of Law at 10.

**7.** This subsection does not apply to the facts of this case and, accordingly, will not be addressed.

**8.** It should be noted that, alternatively, respondent asserts that § 2–207 does not apply at all. Res.Mem. at 9–10. Specifically, the respondent states that the Texas Supreme Court held that § 2.207 does not apply where the buyer and seller come to an agreement orally, then the seller ships the goods and then, either contemporaneously with or subsequent to the shipment, the seller submits a statement or invoice altering the terms of the oral agreement. *Id.* This discussion, however, is inapposite.

The Texas court specifically stated that § 2.207 does not apply where the seller ships the goods and the goods are *accepted.* However, in the instant matter, respondent specifically admits

■ A term is considered to be a material alteration if its inclusion in the contract "would result in surprise or hardship if incorporated without express awareness by the other party." NYUCC § 2–207, official comment 4; *see Valtrol, Inc. v. Gen'l Connectors Corp.,* 884 F.2d 149, 155 (4th Cir.1989); *Trans–Aire Int'l, Inc. v. Northern Adhesive Co.,* 882 F.2d 1254, 1262–63 (7th Cir.1989); *Step–Saver Data Systems, Inc. v. Wyse Technology,* 939 F.2d 91, 104 n. 44, 105 n. 49 (3d Cir.1991); *Bergquist Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1245 (E.D.Pa.1991).

This modern day approach favors a case-by-case materiality determination, focusing on the degree of "surprise" or "hardship" imposed upon the nonassenting party. *Bergquist,* 777 F.Supp. at 1244–45; *see e.g., Pervel Indus. v. T.M. Wallcovering, Inc.,* 871 F.2d 7, 8 (2d Cir.1989) (party bound by arbitration provision where well established custom of sending purchase order confirmations containing an arbitration clause existed and buyer made numerous purchases over a period of time); *Transamerica Oil Corp. v. Lynes, Inc.,* 723 F.2d 758, 765 (10th Cir.1983) ("issue of whether a term materially alters the contract for the purpose of § 2–207(2)(b) is a question of fact that must be determined in light of the facts of the case and the parties' expectations").

■ A *per se* rule characterizing the addition of an arbitration provision as a material alteration, such as the New York rule,[9] is "absolutely contrary to the UCC's special emphasis on the particular circumstances surrounding each contractual relationship."

that it "had not received, signed for, or taken possession of the goods." Galonsky Affidavit at Exh. B (Plaintiff's Original Petition), I ¶ 9.

**9.** The genesis of the so called "New York rule" stems from the pronouncement of the New York State Court of Appeals stating in absolute language that the addition of an arbitration clause was always a material addition. *See Marlene Indus. Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 380 N.E.2d 239, 408 N.Y.S.2d 410 (1978).

However, a year later the court seemed to retreat from its absolute rule by stating that an arbitration clause could become part of the contract by implication of the parties' past conduct or custom and practice in the industry. *See Schubtex, Inc. v. Allen Snyder, Inc.,* 49 N.Y.2d 1, 399 N.E.2d 1154, 424 N.Y.S.2d 133 (1979).

*Bergquist,* 777 F.Supp. at 1245. Whereas, the "surprise or hardship" test is more in tune with the UCC, as well as in support of the strong federal policy favoring arbitration of disputes. *See Moses,* 460 U.S. at 24, 103 S.Ct. at 941. Moreover, this modern approach addresses the "preeminent concern of Congress in passing the [Federal Arbitration] Act," namely, "to ensure the judicial enforcement of privately made agreements to arbitrate." *See Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 219, 221, 105 S.Ct. 1238, 1242, 1243, 84 L.Ed.2d 158 (1985).

■ Clearly, in the instant case, respondent was not surprised by the inclusion of an arbitration provision in the invoices at issue. For a period spanning approximately two years, respondent received 42 invoices, all of which contained an arbitration clause on the face of the invoice, located at the bottom set forth in capital letters. In fact, the respondent actually admits that it was the petitioner's "practice" to include an arbitration provision in its invoices. Res.Mem. at 12.

As for the hardship element, the respondent has not shown in any way that arbitration would impose a "substantial economic hardship" on the respondent, *Trans–Aire,* 882 F.2d at 1262, or that it would "substantially alter the distribution of risk" between the parties. *Step-Saver,* 939 F.2d at 105.

Thus, in accord with the UCC and in the spirit of effecting the " 'accomplishment and execution of the full purposes and objectives of Congress' " with respect to the Federal Arbitration Act, *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255 (citation omitted), I find that the arbitration clause was not a material alteration. Hence, it became part of the contract between the parties because the re-

spondent did not seasonably object to its inclusion.[10] NYUCC § 2–207(2)(c); Tex.Bus. & Com.Code § 2.207(b)(3).

Having found that an agreement to arbitrate exists, I turn now to the issue of whether the transactions at issue fall within the scope of the arbitration provision. Clearly, the arbitration agreement encompasses the transactions in the instant action; i.e., a dispute arising out of or relating to the order under which the goods were shipped.

■ Next, I turn to the issue of whether the petitioner waived its right to compel arbitration. Respondent argues that the petitioner has waived its right to compel arbitration by interposing an answer and filing a Plea in Abatement in the Texas State Court Action. Res.Mem. at 17–19. This argument, however, is totally without merit. In the leading case on the issue of waiver, *Rush v. Oppenheimer & Co.,* 779 F.2d 885 (2d Cir. 1985), the Second Circuit concluded that "a waiver of the right to compel arbitration due to participation in litigation will be found only when prejudice to the other party is demonstrated." *Rush,* 779 F.2d at 887 (citing *Demsey & Assoc's, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir.1972)). "Waiver is not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day." *Id.*

Under the facts of this case, the respondent has failed to make the requisite demonstration of prejudice. There was no extensive involvement in the Texas State Court Action by the petitioner. The fact that the petitioner filed an answer and Plea in Abatement, or even sought a motion to dismiss (which was later withdrawn) is inadequate in

---

10. In connection with the instant case, the petitioner submitted an itemized data report sheet evidencing that the two invoices in question were sent by facsimile transmission to the respondent in Texas on January 29, 1992, and February 3, 1992, respectively. *See* Reply Affidavit at Exh. A; Petition to Compel Arbitration at ¶¶ 11, 12; Petitioner's Mem. at 3. Respondent does not deny these invoices were received by facsimile transmission. Instead, while not denying receipt by fax, the respondent merely puts forth the bald assertion that the invoices were received in the mail some time after February 6, 1992. Galonsky Affidavit at ¶ 10.

By letter dated February 24, 1992, the respondent objected to the arbitration provision. However, in light of the fact that (1) more than twenty-five days had passed since the first invoice was sent by facsimile transmission to respondent; (2) the goods had been loaded on to the respondent's tractor-trailer on or about January, 30, 1992; and, (3) the merchandise was stolen on or about February 6, 1992; I find the respondent's objection of the arbitration provision to be untimely.

and of itself to support the claim of waiver of arbitration. *See Rush,* 779 F.2d at 888–89; *Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 463 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985); *Lester v. Basner,* 676 F.Supp. 481, 485 (S.D.N.Y.1987). Hence, the petitioner did not waive its right to compel arbitration.

Based upon the foregoing, I find that: (1) an arbitration agreement exists between the parties; (2) the dispute falls within the scope of the arbitration agreement; and, (3) the petitioner has not waived its right to compel arbitration. Accordingly, the petitioner's motion to compel arbitration is granted.

At this point, three issues addressed by the parties remain: (1) whether this court has personal jurisdiction over the respondent; (2) whether New York law should be applied with respect to the arbitration; and, (3) whether the Texas State Court Action should be stayed. I will discuss these issues in turn.

■ The respondent asserts that this court lacks personal jurisdiction over the respondent. Res.Mem. at 5–7. This argument is without merit. The arbitration agreement included in the invoices contained both a choice-of-forum clause (stating that the parties are to settle by arbitration in New York City) and a choice-of-law clause (stating that the laws of the State of New York shall apply). In accordance with the arbitration agreement, the respondent has subjected itself, in advance, to the jurisdiction of the court within whose territorial jurisdiction the arbitration proceedings are to be had; that is, the Southern District of New York. *See Farr & Co. v. Cia. Intercontinental De Navegaciaon De Cuba,* 243 F.2d 342, 346 (2d Cir.1957); *Couleur Int'l, Ltd. v. Saint–Tropez West,* 547 F.Supp. 176, 177 (S.D.N.Y. 1982); *Farkar Co. v. R.A. Hanson DISC Ltd.,* 441 F.Supp. 841, 843 n. 1 (S.D.N.Y. 1977), *modified on other grounds,* 583 F.2d 68 (2d Cir.1978); *Lawn v. Franklin,* 328 F.Supp. 791, 793–94 (S.D.N.Y.1971). Accordingly, such advance submission waives any objection to personal jurisdiction and venue. *Id.*

■ With respect to the choice-of-law provision, the Act "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt,* 489 U.S. at 489, 109 S.Ct. at 1261 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967)). Where the parties agreed to abide by state law, enforcing the arbitration provision in accordance with the terms of the agreement is "fully consistent with the goals of the Federal Arbitration Act." *See Volt,* 489 U.S. at 479, 109 S.Ct. at 1256. By "rigorously enforcing" the agreement according to its terms, *see Byrd,* 470 U.S. at 221, 105 S.Ct. at 1242, the "contractual rights and expectations of the parties" are given effect, "without doing violence to the policies" behind the Act. *Volt,* 489 U.S. at 479, 109 S.Ct. at 1256. Thus, in accordance with the arbitration agreement, the laws of the State of New York shall apply.

Finally, the petitioner seeks to stay the Texas State Court Action, pursuant to the Federal Anti–Injunction Act (the "Act"), 28 U.S.C. § 2283.[11] The petitioner bases its request upon the exception contained in the Act authorizing a federal court to stay proceedings in a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." Nonetheless, I find it unnecessary to address an injunction to the Texas state court. However, because the petitioner is entitled to have these issues arbitrated, the respondent is hereby enjoined from proceeding in any way with the Texas State Court Action.

For the foregoing reasons, the petitioner's motion to compel arbitration is granted and the respondent is enjoined from pursuing the Texas State Court Action.

SO ORDERED.

---

11. Section 2283 provides that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C. § 2283.