Whitehead, J.
INTRODUCTION
The plaintiff, Tupman Thurlow Co., Inc. (“Tupman Thurlow”), brought this action against the defendant, Woolf International Corp. (“Woolf j, seeking to enforce an arbitration award confirmed by the Supreme Court of New York. It has moved for summary judgment on the complaint. In addition, Tupman Thurlow seeks an order to compel arbitration of Woolfs counterclaim and to stay this action as to that counterclaim.
Woolf has filed a cross-motion for summary judgment on the complaint. For the following reasons, the plaintiffs motions for summaryjudgment on the complaint and to stay action as to the counterclaim is ALLOWED. The defendant’s motion for summaryjudgment is DENIED.
BACKGROUND
The undisputed material facts are as follows. Tupman Thurlow is a New York corporation engaged in the importation and wholesaling of meat. Woolf is a Massachusetts corporation also engaged in the wholesaling of meat. Between June 1990 and June 1992, Woolf purchased meat from Tupman Thurlow on approximately 65 occasions.
The purchasing procedure on each occasion was as follows: Woolf called Tupman Thurlow on the telephone to place an oral purchase order that included the price, quantity, and description of the meat product. Tupman Thurlow would mail a confirmation to Woolf that verified the price and quantity of the product ordered, and set forth the terms of sale, which terms included an arbitration provision. The product then would be delivered, accompanied by a standard bill of lading. After tendering the meat to Woolf, Tupman Thurlow would send Woolf a payment invoice which again repeated the terms of the sale.
With respect to arbitration, in the lower left-hand corner of the front of the invoice, there appeared the following:
Conditions of sale, including arbitration clause, set forth on reverse side are expressly agreed to and made part of this agreement which covers all matters agreed upon between the parties with reference to this sale and cannot be affected or varied in any way.
The language of the arbitration provision appeared on the reverse side of the invoice. Paragraph 9 of the arbitration provision stated:
9. Arbitration: (a) In the case of fresh frozen meat sales, any controversy arising out of or relating to this contract shall.be settled by arbitration in the city where the vendor has its principal place of business in accordance with the rules of the American Arbitration Association as supplemented or modified by the Meat Importers Council of America, Inc.’s arbitration rules, as then prevailing. In the case of the sale of items other than fresh frozen meat, any controversy arising out of or relating to this contract shall be settled by arbitration in the city where the vendor has its principal place of business in accordance with the rules of the American Arbitration Association as then prevailing. This agreement so to arbitrate shall be specifically enforceable under the then prevailing arbitration law of the state of New York.
Notice of the demand for arbitration shall be filed in writing with the other party to the contract and with the Meat Importers Council of America, Inc. in the case of fresh frozen meat and with the American *253 Arbitration Association in the case of items other than fresh frozen meat. Vendor and Vendee each shall name an arbitrator of his choice, and the arbitrators so named shall agree upon and appoint a third arbitrator from a panel of names supplied by either the Meat Importers Council of America, Inc. in the case of fresh frozen meats or the American Arbitration Association in the case of items other than fresh frozen meat.
(b) Notwithstanding anything to the contrary contained in the above mentioned rules, the parties consent that any papers, notices, or process necessary or proper for the institution or continuance of, or relation to any arbitration proceeding, or for the confirmation of an award and entry of judgment on any award made, including appeals, may be served on each of the parties by registered mail addressed to the party at the principal office of the party, or by personal service on the party wherever located.
(c) The arbitrators shall assess the cost of arbitration and their decision shall be final and binding on both parties.
(d) Judgment upon the award rendered may be entered in any Court having jurisdiction or application may be made to such Court for a judicial confirmation of the award and an order of enforcement, as the case may be.
Woolf never objected to any of the terms of sale or the arbitration provision, never proposed any alternative terms, nor did it sign any of the payment invoices.
The instant dispute arises out of Woolfs failure to pay for meat that it purchased from Tupman Thurlow in June 1992. Payment invoice #56542, dated June 9, 1992, recorded the sale. Woolf had ordered 38,400 lbs of meat costing $45,792. Tupman Thurlow had tendered the meat product after Woolf had made no response or objection to a confirmation order that had been sent by Tupman Thurlow to Woolf. Woolf never paid for the meat.
On September 29, 1992, Tupman Thurlow commenced arbitration before the Meat Importers Council for America, Inc. (“MICA”) pursuant to the arbitration provision. Woolf received notice that the arbitration had begun. On at least two occasions, by letters dated November 19, 1992 and December 28, 1992, Woolf expressed his unwillingness to participate in the proceedings. Woolf disputed MICA’s jurisdiction, asserting that it had been unaware of the arbitration proceeding until it received notice of the proceeding’s commencement, and that it had never expressly consented to such an arbitration provision. Woolf now further contends that arbitration provisions are not customarily used in the meat industry. In support of this contention, it provides invoices of other domestic meat producers and importers which, with one exception, fail to include arbitration provisions.
An arbitration hearing was set for May 12, 1993. Although Woolf received notice of the arbitration proceeding by registered mail on April 22, 1993 and May 10, 1993, it failed to appear. Despite Woolfs absence, the arbitrator proceeded on May 12, 1993. Notwithstanding Tupman Thurlow’s failure to provide any signed arbitration agreements on behalf of Woolf, the arbitrator found that Woolf had acceded to the arbitration clause in light of its long course of dealing with Tupman Thurlow during which it never objected to or questioned the provision. On June 21, 1993, the arbitrator rendered an arbitration award (“award”) to Tupman Thurlow in the sum of $45,792, plus interest of 7% from June 16, 1992, and costs of $807.92.
On August 6, 1993, Tupman Thurlow filed a Petition to Confirm with the Supreme Court of New York. The president of Woolf, Howard J. Woolf, was personally served with process at Woolfs usual place of business in Billerica, Massachusetts on August 12, 1993 by Constable Michael B. Fixman. Constable Fixman’s authority in Massachusetts extended over the cities of Everett, Chelsea, Revere, Malden, and Medford. Disputing the New York court’s personal jurisdiction, Woolf declined to appear to contest the arbitration award. On October 25, 1993, the New York Court granted Tupman Thurlow’s petition and issued an order confirming the award (“judgment”).
On January 11, 1994, Tupman Thurlow commenced this action seeking enforcement of the $51,594.01 judgment in Massachusetts. Woolf filed a counterclaim regarding an entirely different transaction involving allegedly defective meat.
Tupman Thurlow has moved for summary judgment on the complaint and further moves for an order staying Woolfs counterclaim and compelling arbitration of that counterclaim. Woolf has filed a cross-motion for summary judgment on the grounds of (1) lack of personal jurisdiction on the part of the arbitration panel because the arbitration provision is invalid and unenforceable; (2) lack of personal jurisdiction on the part of the Supreme Court of New York; and (3) insufficient service of process by Constable Fixman.
DISCUSSION
Summary Judgment
Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Where the party moving for summary judgment does not have the burden of proof at trial, this burden may *254 be met by either submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Pederson, supra at 17.
A. Enforceability of the Arbitration Provision
The interests of Woolf and Tupman Thurlow essentially stand or fall on the question of whether the arbitration provision contained in the confirmation and payment invoice is part of the agreement between the parties, and therefore binding and enforceable. Since the transaction at issue involves the sale of goods, Article 2 of the Uniform Commercial Code (“U.C.C.”) applies.
Specifically, Section 2-207(2) of the U.C.C. applies where, as here, a written confirmation of an oral contract is sent by one merchant to another, and there is a dispute over additional terms contained in the confirmation. U.C.C. §2-207, official comment 1. Both Massachusetts and New York have adopted this U.C.C. provision in its entirety. N.Y.U.C.C. §2-207(2); M.G.L.c. 106, §2-207(2). Because there is no apparent discrepancy between the states in their adoption of this provision, a choice of law analysis is unnecessary. Hatzlachh Supply, Inc. v. Moishe’s Electronics, Inc., 828 F.Supp. 178, 182 (S.D.N.Y. 1993).
Section 2-207(2) of the U.C.C., a provision applicable to merchants, addresses whether certain additional terms contained in an acceptance of an offer are considered part of the contract. The section states as follows:
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given within a reasonable time after notice of them is received.
N.Y.U.C.C. §2-207; M.G.L.c. 106, §2-207.
Woolf argues that the inclusion of the arbitration provision in the payment invoices constitutes an additional term and materially alters the oral agreement to purchase meat. Woolf asserts that it was unaware of the arbitration provision, that the provision was never actually agreed upon, and that such provisions are not customarily used in trade practice. In response, Tupman Thurlow contends that Woolfs own conduct and course of dealing on 65 occasions over the previous two-year period, during which period it offered no objections to the inclusion of the arbitration clause in the confirmations and invoices, establishes Woolfs knowledge, of and assent to the arbitration provision as part of the agreement.
In 1978, the New York Court of Appeals pronounced a “per se” rule, referred to as the “New York Rule,” which stated that any addition of an “arbitration agreement materially alters a contract for the sale of goods.” Marlene Indus. Corp. v. Cornac Textiles, Inc., 380 N.E.2d 239, 242 (1978). Ayear later, however, the same court retreated from this absolute rule, holding that evidence of trade usage and prior course of dealing may be considered when making a determination as to whether an additional provision, submitted by a party after a contract has been formed and mandating arbitration, can be incorporated into the contract. Schubtex, Inc. v. Allen Snyder, Inc., 399 N.E.2d 1154, 1156 (1979).
Although the “New York Rule” has not been expressly overruled, courts considering the issue have shifted their focus from a “per se” rule to a case-by-case evaluation of whether the inclusion of an additional arbitration provision is a material alteration to the original agreement. In a 1993 case, a federal district court, citing New York law, expressly considered and rejected the “per se” approach. The court opted for what it considered to be the more “modern day approach,” by evaluating the potential materiality of any clause in light of the “circumstances surrounding each contractual relationship.” Hatzlachh Supply, Inc. v. Moishe’s Electronics, Inc., 828 F.Supp. at 183. By looking at such circumstances, the court may conclude that an additional term “constitutes a material alteration if its inclusion in the contract ‘would result in surprise or hardship if incorporated without the express awareness of the other party.’ ” Id. at 183; N.Y.U.C.C. §2-207, official comment 4.
Although the U.C.C. fails to provide definitions for the terms, “surprise or hardship,” one court explained that “[sjurprise means that ‘[a]n alteration is material if consent to it cannot be presumed.’ ” In Re Chateaugay Corp., 162 B.R. 949, 957 (Bkrtcy. S.D.N.Y. 1994) (quoting Union Carbide Corp. v. Oscar Mayer Foods Corp., 947 F.2d 1333, 1336 (7th Cir. 1991)). Factors to be considered when determining whether an element of surprise exists include “parties’ prior course of dealing and the number of written confirmations that they exchanged, industry custom, and the conspicuousness of the term.” In Re Chateaugay Corp. at 957. In Pervel Indus., Inc. v. T.M. Wallcovering, Inc., the court focused on such factors and concluded that a buyer is bound by an arbitration provision “where ... a manufacturer has a well established custom of sending purchase order confirmations containing an arbitration clause, and *255 thebuyer, who has made numerous purchases over a period of time, receiv(ed) in each instance a standard confirmation form which it either signed and returned, or retained without objection.” Pervel Indus., Inc. v. T.M. Wallcovering, Inc., 871 F.2d 7, 8 (2d Cir. 1989).
In the instant case, it cannot be said that Woolf was surprised by the inclusion of an arbitration provision in the written confirmation sent by Tupman Thurlow. Woolf had engaged in 65 transactions with Tupman Thurlow from June 1990 to June 1992, establishing the custom that payment invoices were to serve as written confirmation of oral purchase orders. Each and every written confirmation contained an arbitration provision that Woolf retained without objection. See U.C.C. §2-207(2)(c). Not only was the provision stated in full on the back of the invoice, but it was also referenced on the face of the invoice. Clearly, it can be presumed that Woolf consented to arbitration based on its actions, conduct, and course of dealing with Tupman Thurlow.
Although Woolf has submitted evidence indicating that arbitration clauses are a rarity in the meat industry, the U.C.C. gives greater weight to course of dealing than to usage of trade when construing the language of the contracting parties. See U.C.C. §1-205(4). In this instance, where the course of dealing extended over 65 transactions, the court finds such dealings to be conclusive.
As for the element of hardship, an arbitration provision is enforceable unless it would “impose a ‘substantial economic hardship’ ” on the nonassenting party or would “ ‘substantially alter the distribution of the risk’ between the parties.” Hatzlachh Supply, Inc., 828 F.Supp. 178, 184; (quoting Trans-Acre Int's, Inc. v. Northern Adhesive Co., 882 F.2d 1254, 1262 (7th Cir. 1989) and Step-Saver Data Systems, Inc. v. Wyse Technology, 939 F.2d 91, 105 (3d Cir. 1991)). Woolf sets forth no arguments or evidence which would establish or suggest that it would suffer a substantial economic hardship or that the distribution of risk would be altered by the inclusion of the arbitration provision in the contract.
In light of the prior course of dealings between the parties, this court finds as a matter of law that the arbitration provision does not constitute a material alteration, because its inclusion results in neither surprise nor hardship to Woolf. Therefore, the arbitration provision contained in the confirmation and payment invoice is a component of the agreement between Tupman Thurlow and Woolf, and it is binding and enforceable.
B. Personal Jurisdiction
Woolf asserts that neither the MICA nor the New York Supreme Court had personal jurisdiction over him. Because this court has already determined that the arbitration provision contained in the written confirmation is part of the agreement between the parties, Woolf has consented to and, consequently, subjected himself to the jurisdiction of New York.
It is well established in both Massachusetts and New York law that “forum-selection clauses are regularly enforced as valid consent to personal jurisdiction in a particular forum.” Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shaddock, 822 F.Supp. 125, 128 (S.D.N.Y. 1993); Maxwell Shapiro Woolen Co., Inc. v. Amerotron Corp., 339 Mass. 252, 258 (1959); Inter-meat, Inc. v. American Poultry, Inc., 575 F.2d 1017, 1023 (1978); Hatzlachh Supply Inc., 828 F.Supp. at 185. When an agreement contains an arbitration provision that provides the forum in which the arbitration is to occur, the parties, in advance, “consent to personal jurisdiction in the courts of that forum.” Merrill Lynch, Pierce, Fenner & Smith Inc. at 128; Hatzlachh Supply, Inc. at 185.
The arbitration provision, as incorporated in the Woolf/Tupman Thurlow contract, contains a forum-selection clause which clearly states that the parties have agreed to submit any controversy concerning frozen meat to arbitration with a MICA arbitration panel in the cily where Tupman Thurlow has its principal place of business. At the time of this transaction, Tupman Thurlow’s principal place of business was located in New York. In addition, the provision provides that any judgment upon that panel’s award may be entered for judicial confirmation “in any court having j urisdiction. ”[1]
The existence of this clause establishes that both parties consent and submit themselves, in advance, to the personal jurisdiction of the MICA arbitration panel and the Supreme Court of New York. Thus, the award and judgment are binding and enforceable upon Woolf.
C. Service of Process
Woolf contends that it was not properly served with process, in accordance with the New York Civil Practice Law and Rules, relating to the confirmation proceedings in the New York Supreme Court. Parties to a contract, however, may agree to service of process in any manner so long as it allows for sufficient notice. Nat’l Equip. Rental, Ltd. v. Dec-Wood Corp., 274 N.Y.S.2d 280 (1966). Again, since this court has determined that the arbitration clause is binding and thereby enforceable, Woolf was properly served in accordance with the agreement.
Woolfs argument that it was improperly served, due to Constable Fixman’s limited scope of process serving authority within the state of Massachusetts, is without merit. The arbitration provision clearly expresses that both parties have consented to service of process “by registered mail addressed to the party at the principal office of the party, or by personal service on the party wherever located.” There is no indication in the con *256 tract that personal service must be by any particular individual.
The president of Woolf International, Howard J. Woolf, was served, in hand, with notice of the proceedings before the New York Supreme Court. Such personal service was sufficient and proper under the provisions of the agreement.
ORDER
Based on the foregoing, it is ORDERED that:
1) the motion of plaintiff, Tupman Thurlow Co., Inc., for summary judgment be ALLOWED; and 2) the cross-motion of the defendant Woolf International Corp. for summary judgment on the plaintiffs complaint be DENIED.
It is further ordered that the motion of the plaintiff, Tupman Thurlow Co., Inc., to stay action on the counterclaim pending arbitration also be ALLOWED.

In this context, the word “jurisdiction” would clearly refer to “subject matter jurisdiction."