MORGAN AND BROTHER MANHATTAN STORAGE COMPANY, INC., Appellant, *v.* HERBERT M. BALIN et al., as Copartners, Practicing Law Under the Name of WYDLER, BALIN, PARES & SOLOWAY, et al., Respondents.

First Department, March 6, 1975.

*Lawrence P. McGauley* of counsel (*Ronald S. Herzog* with him on the brief; *Jackson, Nash, Brophy, Barringer & Brooks*, attorneys), for appellant.

*Samuel Kirschenbaum* of counsel (*Dreyer & Traub* and *Wydler, Balin, Pares & Soloway*, attorneys), for respondents.

LANE, J. Morgan and Brother Manhattan Storage Company, Inc. (Morgan Storage) and H & W Enterprises Co. (H & W) entered into an agreement for the sale of certain real property in New York City. Morgan Storage was purchasing the build-

ing for the specific purpose of storing records and archives.
The parties anticipated the possibility that the existing certificate of occupancy would not allow for use of the building as required by Morgan Storage. Accordingly, clause 24 of the contract provided that the purchaser (Morgan Storage) would make "prompt and diligent application" to the municipality for amendment of the certificate of occupancy to allow for use of the premises as a record or archive storage warehouse. The amended certificate of occupancy was to be obtained within 30 days from the date of the contract.

Subdivision B of clause 24 provided that if the purchaser, in order to obtain the amended certificate of occupancy, was required to make improvements to the premises, then a written statement specifying the necessary improvements and their estimated cost was to be ascertained and certified by a licensed engineer mutually acceptable to the parties. Such statement was to be submitted to the seller within 30 days of the signing of the contract.

The next two subdivisions explicitly delineated the method of apportioning costs of the improvements between the parties. It also provided for holding funds in escrow subsequent to closing to cover the estimated costs of any necessary building modifications. The contract provided that the purchaser had the right to elect to cancel the contract in the event an amended certificate of occupancy could not be obtained. Furthermore, if the cost of the estimated building improvements necessary to obtain the certificate of occupancy exceeded $5,000, then the seller had the right to elect to cancel.

On February 16, 1971, the parties executed the contract in question and the purchaser deposited $58,000 in escrow pending closing of title on the premises and subject to the contractual rights of the respective parties.

On the very day of the signing of the contract, E. Sadler Morgan (Morgan), the president of Morgan Storage, arranged an appointment with an official of the Department of Buildings. On February 18, Morgan and a Mr. Santoro, a civil engineer retained by Morgan, met with a Mr. Minkin, an executive engineer affiliated with the Department of Buildings.

Morgan was informed that the existing certificate of occupancy would not permit for use of the building as contemplated. Morgan did not file a formal application for a certificate of occupancy nor explore with Mr. Minkin the possibility of reinforcing the structure to increase the load capacity to such an extent that an amended certificate of occupancy would issue.

Instead, Morgan Storage sent a letter to H & W stating that an amended certificate of occupancy could not be obtained and that Morgan elected to cancel the contract. This cancellation letter was rejected by H & W.

Morgan then sent a second letter of cancellation enclosing a reply of Mr. Minkin which stated in pertinent part:

"You are advised that an Alteration Application must be filed by a Registered Architect or Licensed Professional Engineer for the proposed change of use, with appropriate plans. Said application and plans will be examined for compliance with applicable building laws; and, if satisfactory, approved after which a permit may be taken out to perform any desired or required work.

"Upon completion of all work, a certificate of occupancy would be issued upon application therefor, after final inspection verifies completion of all work in conformance with approved plans.

"However, it is noted that certificate of occupancy No. 3262 indicates that the live load capacity of the seventh to eleventh floors is only 60 psf., which is inadequate for the proposed change of use on these floors from offices to warehouse storage use."

After rejection by H & W of the second letter of cancellation, Morgan Storage instituted this action for recovery of its down payment. H & W counterclaimed for specific performance of the contract.

Trial Term dismissed the complaint and granted judgment in favor of H & W on its counterclaim for specific performance. We would affirm.

Our dissenting brethren seize upon the first portion of clause 24 to find that Morgan Storage complied with its contractual obligations. However, clause 24 of the contract, *read in its entirety,* required not only inquiry regarding the status of the then extant certificate of occupancy but also required affirmative action on the part of the purchaser in the form of building improvement to obtain amendment of the certificate of occupancy. Morgan Storage concededly made no further inquiry. Cancellation of the contract which required inability to obtain an amended certificate of occupancy was therefore unavailable to Morgan Storage and, furthermore, the right to return of the down payment was forfeited. In sum, plaintiff was prompt but not diligent.

Furthermore, H & W was not limited to its remedy of retention of the down payment as damages. H & W could have opted as it did for specific performance of the contract.

The mere fact that breach by the vendee would allow the vendor to retain the down payment does not preclude the granting of specific performance (5A Corbin, Contracts, § 1213). A vendor may be entitled to specific performance on the theory of inadequacy of the remedy at law (Restatement, Contracts, § 360; *Woodruff* v. *Germansky*, 233 N. Y. 365, 369; *Kroll* v. *Zimmerman*, 274 App. Div. 1070); that the ends of justice would so best be served (cf. 5A Corbin, Contracts, § 1136); or under a theory of mutuality of remedy (cf. 5A Corbin, Contracts, § 1136; *Baumann* v. *Pinckney*, 118 N. Y. 604).

The law in this State was succinctly outlined by Judge POUND when he stated: "The New York rule is thus stated: 'As early as 1835, it was said by Chancellor Walworth that a suit in equity against a vendee to compel a specific performance of a contract to purchase land has always been sustained as a part of the appropriate and acknowledged jurisdiction of a court of equity, although the vendor has, in most cases, another remedy by an action at law upon the agreement to purchase. (*Brown* v. *Haff*, 5 Paige 235.) One of the earliest decisions of this court was to the same effect (*Crary* v. *Smith*, 2 N. Y. 60) and the right of a vendee to maintain specific performance is too well settled to require further discussion.' (*Baumann* v. *Pinckney*, 118 N. Y. 604, 612.) " (*Woodruff* v. *Germansky*, 233 N. Y. 365, 369.)

Accordingly, the judgment entered May 13, 1974 dismissing the complaint and granting judgment on the counterclaim for specific performance should be affirmed with costs.

CAPOZZOLI, J. (dissenting). The agreement of February 16, 1971, by which plaintiff contracted to purchase 64–68 Fulton Street for $580,000, and toward which it had made a $58,000 down payment, provided, amongst other things, the following:

"Purchaser agrees to make prompt and diligent application to the municipality having jurisdiction for an amendment of the certificate of occupancy for the subject premises for use as a record or archive storage warehouse. In the event that the purchaser is unable to obtain such amended certificate of occupancy within thirty (30) days from the date of contract, then purchaser shall have the right to elect to cancel this contract by giving written notice thereof by certified or registered mail to the seller within said thirty-day period in the manner elsewhere provided for herein, with a copy of such notice to the escrowee, in which event the contract payment made hereunder shall be returned to the purchaser and there-

upon each of the parties hereto shall have no further claim against the other.''

On the very same day, after the contract was signed, an appointment was made for plaintiff's president to meet with Irving Minkin, Deputy Borough Superintendent of the Borough of Manhattan, attached to the Building Department of the City of New York, to discuss the proposed amendment to the certificate of occupancy. Pursuant to this arrangement plaintiff's president, and a professional engineer retained by plaintiff to assist in securing the amended certificate of occupancy, called at Mr. Minkin's office. It was Mr. Minkin's duty and customary practice, in his official capacity, to receive applicants interested in different kinds of official action on the part of the Building Department, review their problems and furnish information, advice and guidance to them in connection with their applications. At that meeting both the plaintiff's president and the retained professional engineer were told by Mr. Minkin that the load level permitted in the building was not adequate for the proposed use and, therefore, the building would not qualify for the granting of the amended certificate of occupancy. This information was conveyed orally.

Thereafter, and on February 25, 1971, the plaintiff wrote to the Department of Buildngs making a written request for the amendment of the certificate of occupancy so as to provide for warehouse storage use of the building. A reply was received to this last letter from the Housing and Development Administration of the City of New York, dated March 2, 1971, which concluded: '' It is noted that certificate of occupancy No. 3262 indicates that the live load capacity of the seventh to eleventh floors is only 60 psf, which is inadequate for the proposed change of use on these floors from offices to warehouse storage use ''. This letter was signed by Irving E. Minkin, P. E., Deputy Borough Superintendent of Manhattan.

Obviously, Mr. Minkin, as Deputy Borough Superintendent of Manhattan, was clothed with authority to make his determination, as twice expressed to plaintiff orally and in writing, which was in effect, a rejection of plaintiff's request for an amended certificate of occupancy. In the face of such determination, that the live load capacity was inadequate for the proposed change, of what earthly use would it have been for the plaintiff to expend funds for engineering plans, etc? Under the circumstances it would have been futile for the plaintiff to proceed further.

All that the contract called upon the plaintiff to do was to make "prompt and diligent application" and it did just that. The contract required nothing more. It did not prescribe any specific type of "application", nor what forms, if any, were to be filed, nor any specific procedure to be followed by plaintiff in his dealings with the city authorities.

It should be noted also that this agreement was drawn by the respondents and: ",Since the language is the defendant's we must construe it, if its meaning is doubtful, most favorably to the plaintiff. [Citing cases.] We must also give its words the meaning which the defendant ought reasonably to have understood that the plaintiff would put upon them." (*Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 196.)

As was also stated in *Gans* v. *Aetna Life Ins. Co.* (214 N. Y. 326, 330): "Presumptively, their intent is expressed by the natural and ordinary meaning of their language referable to it and such meaning cannot be perverted or destroyed by the courts through construction. Where the parties by their words have left no fair reason for doubt, there is no just or defensible excuse for construction. [Citing cases.]"

For the reasons stated above, I would reverse and grant judgment in favor of the plaintiff-appellant, as demanded in the first cause of action of its amended complaint.

STEVENS, J. P., and MARKEWICH, J., concur with LANE, J.; CAPOZZOLI and NUNEZ, JJ., dissent in an opinion by CAPOZZOLI, J.

Judgment, Supreme Court, New York County, entered on May 13, 1974, affirmed. Respondents Heinz and Weinstein, doing business as H & W Enterprises Co., shall recover $60 costs and disbursements of this appeal from appellant.