The GUINNESS–HARP CORPORATION, Plaintiff-Appellee,

v.

JOS. SCHLITZ BREWING COMPANY, Defendant-Appellant.

No. 317, Docket 79–7572.

United States Court of Appeals, Second Circuit.

Argued Oct. 24, 1979.

Decided Jan. 21, 1980.

Edward Wolfe, New York City (Haliburton Fales, 2d, James P. Laughlin, James H. Schnare, II, White & Case, New York City, on brief), for defendant-appellant.

Robert L. Haig, New York City (Eugene T. D'Ablemont, Christopher M. Nolland, Kelley, Drye & Warren, New York City, on brief), for plaintiff-appellee.

Before FRIENDLY, OAKES and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This is an appeal from the granting of an injunction to preserve the status quo of a

beer distributorship pending arbitration of the brewer's right to terminate its agreement with its distributor. The principal issues are whether the agreement provides for maintenance of the status quo during the arbitration and whether the availability of that relief is to be determined by the court or by the arbitrator.

The essential facts are not in dispute. Pursuant to an August, 1971 agreement, the Jos. Schlitz Brewing Co. and the Guinness-Harp Corporation provided that Guinness was to be the distributor of certain Schlitz products throughout most of New York City. No time limit was placed on the duration of the distributorship; instead, the agreement established specific circumstances and procedures by which the distributorship can be terminated. Paragraph 4 provided that Schlitz may terminate on ten days' notice in certain specified situations not claimed to be applicable to this case. Paragraph 5 contains an introductory section and four lettered sub-paragraphs. The introductory section states:

> Should a breach occur by Buyer [Guinness] of any of the provisions of the Agreement, except the occurrence of any of the events as set forth in Paragraph 4 for which Seller [Schlitz] may terminate this Agreement, the following procedure will become effective *prior to the termination of Buyer by Seller*: (Emphasis added).

Sub-paragraph 5(a) requires Schlitz to present to Guinness a list of particulars concerning the alleged breach and to give Guinness from 30 to 180 days to correct the breach. Sub-paragraph 5(b) allows any disagreement remaining after the period specified for correction of the breach to be submitted to a review panel established by Schlitz. The third and fourth sub-paragraphs constitute the arbitration provisions. Sub-paragraph 5(c) establishes the procedure for initiating arbitration, and states: "Any controversy or claim arising out of or relating to the Agreement, or any other agreement, or the breach thereof shall be settled by ARBITRATION . . . ." Sub-paragraph 5(d) states: "IT IS UNDERSTOOD THAT ARBITRATION SHALL BE THE SOLE REMEDY OF EITHER PARTY AGAINST THE OTHER . . ." and creates a single exception, not relevant here, in situations where there is money due to Schlitz from Guinness.

On March 14, 1979, Schlitz, dissatisfied with the sales performance of Guinness, sent Guinness a list of particulars pursuant to sub-paragraph 5(a) of the agreement, and specified a time period of sixty days for correction of the alleged deficiencies. Since Guinness' performance continued to be unacceptable to Schlitz at the end of the prescribed period, Schlitz informed Guinness that the agreement would be terminated on June 1, 1979. Guinness, insisting that it had fully performed its obligations, demanded a hearing by a Schlitz review panel, pursuant to sub-paragraph 5(b) of the agreement. Schlitz suspended the termination, held the review panel hearing on June 19, and concluded that there was just cause for termination. Guinness then demanded arbitration of the disagreement, pursuant to sub-paragraph 5(c). By letter dated July 10, 1979, Schlitz informed Guinness that the distributorship had been terminated on the previous day.

Guinness then brought suit in the Supreme Court of New York, seeking a declaration that termination of the distributorship could not occur until after arbitration, and an injunction restraining Schlitz from terminating until that arbitration had been concluded. The case was removed to the United States District Court for the Eastern District of New York on grounds of diversity of citizenship. The District Court (Jacob Mishler, Chief Judge), after an evidentiary hearing, issued a temporary restraining order that required Schlitz to resume shipping its products to Guinness for distribution. Shortly thereafter, the Court issued a preliminary injunction to the same effect, followed by an order enjoining Schlitz from terminating the distributorship until after the completion of arbitration. Schlitz appeals from this decision.

The principal issue raised by this appeal involves the proper interpretation of the

distributorship agreement. Schlitz contends that sub-paragraphs 5(c) and 5(d) of the agreement require that all disputes between it and Guinness, including a dispute concerning the procedures to be followed prior to termination, must be submitted to arbitration. Guinness argues that the introductory section of paragraph 5 grants it the right to continue its distributorship unless and until termination has been found warranted by the arbitrator, and that this right to maintain the status quo pending arbitration can be enforced by a court.

■ At the outset, the procedural posture of the case should be clarified. Guinness has sought and the District Court has granted a preliminary injunction. Normally, such an injunction is preliminary to a plenary judicial hearing on the merits of the lawsuit. In this case, however, as both sides agree, the merits of their fundamental dispute—whether grounds exist for ultimate termination of the distributorship—is a matter for arbitration, not for the court. The "merits" of their lawsuit concern only whether there can be termination in the interval prior to completion of arbitration.[1] As to this issue, the injunction issued by the District Court is for all practical purposes a final injunction; it maintains the distributorship pending arbitration, and that is the relief for which Guinness brought this lawsuit.[2] Perhaps in a technical sense the injunction could be considered to be preliminary: the District Court could be thought to have issued the injunction only upon preliminary consideration, leaving Guinness to return to Court to secure a final injunc-

tion upon plenary consideration of the issue on the merits, i. e., entitlement to an injunction pending arbitration. But neither side has suggested that there is any reason to return to the District Court for further consideration of this issue. Hence what comes to us for review labeled a preliminary injunction is in substance a final injunction, albeit one of limited duration.

■■ Recognition of the "final" nature of the injunction avoids the need of inquiring whether the traditional test for a preliminary injunction has been met: (a) irreparable harm plus (b) either probable success on the merits, or a sufficiently serious question on the merits to make it a fair ground of litigation and a balance of hardships tipping decidedly in the plaintiff's favor. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).[3] Since the injunction plaintiff has obtained is in substance final, to resist this appeal plaintiff must show not simply a serious question or probable success on the merits; it must, like any plaintiff seeking to uphold a final judgment, demonstrate that its legal position is correct. At the same time, since the injunction, though temporary, is not really preliminary to any further court determination, the irreparable injury requirement of a preliminary injunction need not be met as such. However, to establish its entitlement to an injunction to enforce its interpretation of the status quo provision of the agreement, plaintiff must satisfy the traditional equitable standards for specific performance of a contract. The risk of injury to plaintiff if the injunction is denied re-

---

1. If, for purposes of assessing probable success on the merits, *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979), the merits were incorrectly considered to be the ultimate issue of contract termination, two adverse consequences would occur. The court proceeding would necessarily be duplicative of the arbitration, thereby reducing the efficiency of using arbitration, and would threaten the independence of the arbitrator's ultimate determination, see *Buffalo Forge Co. v. United Steelworkers of America*, 428 U.S. 397, 412, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).

2. Guinness' complaint also sought a declaration of its right not to be terminated as a distributor

prior to the completion of arbitration. The granting of the injunction, for all practical purposes, determines the existence of this right.

3. If plaintiff had obtained the injunction on a preliminary basis, expecting to return to the District Court to demonstrate, at a plenary hearing, that a "preliminary" injunction should be made "final" (even though it sought no additional relief), then the traditional test for obtaining a preliminary injunction would apply. Even in that case, the final decision would involve only entitlement to interim relief, and the injunction would be preliminary only to that final determination.

mains in the case as an ingredient of plaintiff's burden to show that, on a balance of equities, it is entitled to equitable relief.

Thus, this case differs significantly from a case like *Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755 (2d Cir. 1979), where a plaintiff also sought an injunction to maintain a franchise relationship pending determination of whether termination of the relationship was lawful. In *Kahn Music* the plaintiff asked the court to adjudicate. the merits of the dispute and sought a traditional preliminary injunction pending that judicial determination. That injunction was issued after preliminary consideration, and it was preliminary to the broader final injunction plaintiff hoped to obtain to prevent termination of its franchise after the lawsuit. Here, plaintiff seeks from a court specific performance of a contract term that it alleges entitles it only to maintenance of the status quo pending resolution of the ultimate contract dispute by the arbitrator.

▄▄▄ On the merits, the issue for determination in this case is whether Guinness' distributorship can be terminated during the period prior to arbitration. The Federal Arbitration Act, 9 U.S.C. §§ 1–14 (1976), makes enforceable an agreement to arbitrate, 9 U.S.C. § 4; *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.*, 348 F.2d 693, 696 (2d Cir. 1965). In the context of this case, the continuation of Guinness' distributorship can be considered part of the obligation to arbitrate. Guinness did not simply agree to arbitration in general; it agreed to arbitration that was to take place before the status quo between the parties had been altered. Federal law applies to enforcement of a duty to arbitrate, whenever interstate commerce is involved. *Grand Bahama Petroleum Co. v. Asiatic Petroleum Corp.*, 550 F.2d 1320, 1324 (2d Cir. 1977); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 360 F.2d 315, 317–18 (2d Cir. 1966), *aff'd*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1961). Applying the federal policy of the Arbitration Act, a federal court is entitled to adjudicate "issues relating to the making and *performance* of the agreement to arbitrate," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395, 404, 87 S.Ct. 1801, 1806, 1807, 18 L.Ed.2d 1270 (1967) (emphasis added), and it is empowered to grant specific performance of the agreement to arbitrate. Here maintenance of the status quo pending arbitration relates in a substantial way to the performance of the agreement.[4] Guinness is therefore entitled to specific performance of its arbitration agreement, including the status quo provision.[5]

▄▄▄ The same conclusion is reached even if the status quo provision were considered to be a promise separate from the obligation to arbitrate but closely related to it as either a condition precedent to arbitration or part of the consideration for the promise to arbitrate. In that event, the issue on the merits might still be governed by federal arbitration law, but would be resolved no differently if governed by New York contract law.[6] Under either body of law the

---

4. *Detroit Newspaper Publishers' Association v. Detroit Typographical Union No. 18*, 471 F.2d 872 (6th Cir. 1972), *cert. denied*, 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973), is not to the contrary. In that case, the Sixth Circuit reversed a district court injunction, and held that the arbitration clause in a contract controlled a provision that the status quo was to be preserved pending arbitration. But the status quo clause in that case was an independent provision of the contract, rather than being dependent on the arbitration requirement. Moreover, the Sixth Circuit based its reversal on the fact that the District Court had failed to inquire into the equities of the case, not on that

Court's lack of power to grant the injunction. *Id.* at 875–76.

5. The relief Guinness requested is an injunction against termination of the distributorship prior to arbitration, rather than specific performance of the arbitration agreement prior to termination. However, these are merely different legal theories for the same relief.

6. To whatever extent state law applies, the parties have contracted for the application of New York law in paragraph 12 of the agreement.

plain meaning of the contract remains that the status quo is to continue pending arbitration, and the existence of the arbitration provision does not prevent a court from enforcing that plain meaning. Though the arbitration provision, sub-paragraphs 5(c) and 5(d) of the agreement, is broadly worded, that provision is dependent upon the introductory section of paragraph 5, which forbids termination until a series of procedures, including arbitration, has been followed.[7] That is what Guinness bargained for, and that is what it is entitled to receive. Schlitz apparently recognized that the other procedures were required before termination, for it followed these procedures to the letter. The arbitration clause is no different from these other provisions.[8] See *Pollux Marine Agencies, Inc. v. Louis Dreyfus Corp.*, 455 F.Supp. 211 (S.D.N.Y. 1978); *Rosenbaum v. American Surety Co.*, 11 N.Y.2d 310, 183 N.E.2d 667, 229 N.Y.S.2d 375 (1962).

New York follows the general rule that specific performance is available where there is no adequate monetary remedy. *Monclova v. Arnett*, 3 N.Y.2d 33, 163 N.Y. S.2d 652, 143 N.E.2d 375 (1957); *Morgan & Bro. Manhattan Storage Co. v. Balin*, 47 A.D.2d 85, 364 N.Y.S.2d 904, *motion denied*, 38 N.Y.S.2d 797, 381 N.Y.S.2d 871, 345 N.E.2d 343 (1975), *aff'd*, 39 N.Y.2d 848, 386 N.Y.S.2d 100, 351 N.E.2d 748 (1976). Here, Guinness has no adequate remedy at law and has sufficiently demonstrated that the equities entitle it to an injunction. Losing the Schlitz distributorship for the period pending completion of the arbitration is likely to disrupt Guinness' business and injure its reputation, consequences for which compensation would be difficult, if not impossible, to determine. In contrast to the situation in *Kahn Music Co. v. Baldwin Piano & Organ Co., supra*, the Schlitz dis-

tributorship was a basic element of Guinness' business and represented a business relationship of long-standing duration.

Consequently, an injunction to enforce the status quo provision is available whether this provision is regarded either as part of the obligation to arbitrate subject to the federal arbitration law, or as a condition precedent to or consideration for arbitration subject to federal arbitration law or New York's substantive contract law. Under either approach, the District Court properly determined that an injunction should issue. The Court's assessment of the equities— that the risk of irreparable injury to Guinness without an injunction substantially outweighed any hardship to Schlitz if an injunction were issued—is amply supported by the record.

Affirmed.

---

7. It should also be noted that termination on only ten days' notice is permitted in certain special circumstances, according to this section and paragraph 4. This exception to the established dispute procedures would be meaningless if the procedures, including prohibition of termination pending their completion, were not regarded as being otherwise mandatory.

8. It is possible that federal labor policy under Section 301(a) of the Labor Management Relations Act would grant a broader scope to an arbitration clause with respect to some procedural aspects, *see, e. g., Livingston v. John Wiley & Sons*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). But this policy does not apply to commercial arbitration, nor would it be likely to alter the result in this case, even in a collective bargaining context.