**REMY AMERIQUE, INC., Plaintiff,**

v.

**TOUZET DISTRIBUTION, S.A.R.L. and SICA Les Vignerons Provencaux, Defendants.**

**No. 93 Civ. 0500 (CSH).**

United States District Court, S.D. New York.

March 16, 1993.

Moses & Singer, New York City, for plaintiff; David Rabinowitz, Paula K. Colbath, of counsel.

Kevorkian & Partners, New York City, for defendants; Donna Glasgow, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Defendants move this Court to compel arbitration of disputes between themselves and the plaintiff, and to stay this action in the interim.

### Background

Plaintiff Remy Amerique, Inc. ("Remy"), a Delaware corporation with its principal place of business in New York, is the successor in interest of another domestic corporation, "21" Brands, Inc. Remy is engaged in the business of importing wines, spirits, and liqueurs, and distributing them to wholesale distributors throughout the United States.

Defendant Touzet Distribution, S.A.R.L. ("Touzet"), a French corporation, produces and distributes alcoholic beverages, including table wines under the trade name "Sommeliere."

Defendant SICA Les Vignerons Provencaux ("SICA"), a French cooperative association, markets Touzet's products and owns trademarks for certain of Touzet's wine products.

In January 1986 Touzet, SICA, and "21" Brands entered into a contract for the distribution of Touzet's products in the United States, Puerto Rico and the U.S. Virgin Islands. In April 1989, "21" was merged into Remy.

This contract grants Remy the exclusive right to import and distribute a variety of Touzet's products described in the agreement within the designated territory.

In October 1992, Remy commenced an action in the New York State Supreme Court, New York County, against Touzet and SICA. Remy alleged in that complaint that defendants have failed to ship orders pursuant to the contract, and have failed to recognize Remy's claimed right of first refusal as to certain new products. Touzet and SICA respond that Remy materially breached the contract by failing and refusing to pay sums due to them.

Defendants removed the State court action to this Court. The basis for removal was the Convention on the Recognition and Enforce-

ment of Foreign Arbitral Awards (the "Convention"), ratified by the United States and enacted into domestic law by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*

The Convention covers arbitration agreements between citizens or corporations of adhering nations "arising out of a legal relationship, whether contractual or not, which is considered as commercial ..." 9 U.S.C. § 202. Section 205 provides for the removal of cases from State courts where the subject matter relates to an arbitration agreement falling under the Convention.

In the case at bar, the contract between the parties provides in pertinent part as follows:

*Arbitration.* (a) Any controversy or claim arising out of, or relating to this Agreement or the breach thereof shall be settled by three (3) arbitrators pursuant to the Rules of Conciliation and Arbitration of the International Chamber of Commerce. The arbitration hearing will be held in The Hague, Holland, except that, to the extent that the dispute pertains to the local market, business practices, or requires evidence primarily obtainable in the Licensed Territory, the parties authorize the arbitrators to conduct all or part of the proceedings in the Licensed Territory. All reasonably incurred travel and boarding costs of the parties, their counsel and witnesses shall be treated as part of the arbitration costs and as such shall be subject to award by the arbitrators.

(b) The parties may seek from the Arbitration Tribunal and from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions.

There is no dispute that this arbitration agreement falls within the Convention.

The arbitration agreement in ¶ 12(a) incorporates by reference the Rules of Conciliation and Arbitration of the International Chamber of Commerce ("ICC"). The ICC Rules provide in Article 13(3):

The parties shall be free to determine the law to be applied by the arbitrator to the merits of the dispute. In the absence of any indication by the parties as to the applicable law, the arbitrator shall apply the law designated as the proper law by the rule of conflict which he deems appropriate.

The parties provided for their choice of law in ¶ 11 of their agreement, which provides:

11. *Choice of Law.* This Agreement shall be governed by the laws of the State of New York, U.S.A.

Since the commencement of the captioned action, defendants' French counsel have served a demand for arbitration of defendants' claims that Remy has breached the contract by failing to pay sums owing to defendants. The General Secretary of the Court of International Arbitration of the ICC has responded to that demand by letter dated December 23, 1992, setting the arbitration machinery in motion.

Touzet and SICA contend in this Court that the disputes between the parties fall within the broad arbitration agreement contained in ¶ 12(a) of the underlying contract, and that they are entitled to an order compelling arbitration under 9 U.S.C. § 206, which provides in part: "A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." In the case at bar, The Hague is designated as the place of arbitration.

Remy contends that the action it commenced in the State court, thereafter removed to this Court, falls outside the arbitration agreement contained in ¶ 12(a) of the contract by reason of ¶ 12(b), which allows the parties to seek "from any judicial courts of proper jurisdiction equitable relief by way of temporary and permanent injunctions." In that regard, Remy stresses that its complaint is drafted in the form of a demand in equity for specific performance.

Remy's complaint alleges two causes of action. The first alleges that SICA repudiated the agreement by stating unequivocally its intention no longer to honor Remy's exclusive rights in the designated territory. Complaint, ¶ 18. The second cause of action al-

leges that Touzet and SICA have begun distributing a new wine product in the territory without having first accorded to Remy a right of first refusal for such distribution allegedly given by the agreement to Remy. *Id.*, at ¶ 24. As to each of these causes of action, Remy alleges that it has no adequate remedy at law, and casts its demands for relief in the language of equitable demands for specific performance. Thus the complaint concludes:

WHEREFORE, plaintiff demands judgment against Touzet and SICA, as follows:

(a) ordering Touzet and SICA, preliminarily during the pendency of this action and thereafter, to specifically perform and comply with all of its obligations under the Agreement, including: (1) shipping to Remy Amerique the Order Goods and all Touzet's Products ordered hereafter during the term of the Agreement; and (2) refraining from selling any of its Products in or into the Territory or causing such Products to be sold in the Territory, except through Remy Amerique;

(b) ordering Touzet and SICA, preliminarily during the pendency of this action and thereafter, to specifically perform and comply with all of its obligations under the Agreement, including, granting to Remy Amerique the right of first refusal to import and distribute any an all New Products in the Territory, and forbidding Touzet and SICA from importing and distributing any such New Product in the Territory until and unless Remy Amerique has been accorded such right of first refusal; and

(c) awarding Remy Amerique the costs and disbursements of this action, including attorneys' fees, and such other and further relief as this Court may deem just and proper.

Relying upon ¶ 12(b) of the arbitration agreement, Remy contends that it cannot be compelled to arbitrate disputes arising out of claims that are equitable in nature.

## Discussion

The parties debate the threshold issue of governing law. Remy says that New York law controls under the choice of law provision in ¶ 11 of the Agreement, and cites *Volt*

*Information Services, Inc. v. The Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Touzet and SICA argue that the decisive question is one of arbitrability, an issue governed by the Federal Arbitration Act ("FAA") as extended by the Convention.

In *Volt* a construction contact contained an agreement to arbitrate all disputes arising out of the contract, and a choice-of-law clause providing that the contract would be governed by the law of the place where the construction project was located (which turned out to be California). California law provides for a stay of arbitration pending resolution of related litigation between a party to the arbitration agreement and third parties not bound by it. The FAA contains no comparable provision and, because that is so, the party seeking to compel arbitration resisted the stay provided for by California law. The Supreme Court held that where "the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that the arbitration is stayed where the Act would otherwise permit it to go forward." 489 U.S. at 479, 109 S.Ct. at 1255. In defining the goals of the FAA, the Court said at 478, 109 S.Ct. at 1255:

The FAA was designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. at 219–220, and to place such agreements "'upon the same footing as other contracts,'" *Scherk v. Alberto–Culver Co.*, 417 U.S., at 511 (quoting H.R.Rep. No. 96, 68 Cong., 1st Sess., 1, 2 (1924)).

It did not follow from those goals, the Court reasoned, "that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself." *Id.* at 479, 109 S.Ct. at 1255.

*Volt* deals with the procedural rules to be followed in arbitration. In that context, the parties are free to include in their agreement a choice-of-law provision which impacts upon procedural rules. But *Volt*

does not represent a retreat by the Court from "the settled federal rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for the federal policy favoring arbitration." 489 U.S. at 475, 109 S.Ct. at 1253. The unsuccessful petitioner in *Volt* argued that such was the effect of application of the California procedural law, citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The Court in *Volt* acknowledged the existence of that federal rule, but concluded that application of the California rules of arbitration did not offend it:

> These cases of course establish that, in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, see *Perry v. Thomas*, 482 U.S. 483, 493, n. 9 [107 S.Ct. 2520, 2527, n. 9, 96 L.Ed.2d 426] (1987), due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.
>
> But we do not think the Court of Appeal offended the *Moses H. Cone* principle by interpreting the choice-of-law provision to mean that the parties intended the California rules of arbitration, including the § 1281.2(c) stay provision, to apply to their arbitration agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not offend the rule of liberal construction set forth in *Moses H. Cone*, nor does it offend any other policy embodied in the FAA.

*Id.*, 489 U.S. at 475–76, 109 S.Ct. at 1254 (footnote omitted).

■ In the case at bar, Remy's construction of the contract implicates issues of arbitrability, rather than arbitration rules or procedures. Remy contends that any claim forming the basis of a demand for injunctive relief under ¶ 12(b) of the arbitration agreement is not subject to arbitration under ¶ 12(a). On Remy's construction, it is entitled to a full plenary trial in this Court on its claims against Touzet and SICA for specific performance of the contract, while acknowledging that the claims of Touzet and SICA against Remy for money damages are arbitrable at The Hague under ¶ 12(a).

In short, Remy contends that its claims that Touzet and SICA repudiated and breached the contract are not arbitrable under the arbitration agreement because Remy casts its demand for relief in an equitable forum. That is not at all the sort of question involved in *Volt*. Rather, the question is one of the arbitrability of Remy's claims; and, as *Volt* acknowledges, in that context "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." 489 U.S. at 476, 109 S.Ct. at 1254.

■ Applying federal principles, it is clear that Remy's contention must be rejected. From Remy's point of view, the most that can be said about the inter-relationship of subparagraphs 12(a) and (b) is that the agreement is ambiguous. Federal policy requires the resolution of that ambiguity in favor of arbitration: in this case, the submission of Remy's claim of wrongful contract repudiation and breach to arbitration in The Hague, where both parties' claims will be resolved.

But I do not think that the arbitration agreement is ambiguous.

■ Quite apart from federal policy, it is a sound principle of construction to interpret a contract so that all its provisions dwell in harmony with each other, to the greatest extent possible. Remy's construction of ¶ 12(b) would, solely on the basis of the form of relief sought, significantly narrow the broad provision for arbitration in ¶ 12(a). That gives rise to a tension between the two

subparagraphs which a different construction, more closely in tune with federal public policy, easily avoids.

Under that construction, the effect of ¶ 12(b) is to make injunctive relief in judicial courts of proper jurisdiction available to the parties in aid of arbitration, rather than (as Remy would have it) transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed for. Under that preferable construction, and as counsel for defendants acknowledged at oral argument, Remy could seek a preliminary injunction in this Court pending resolution of the merits by arbitration. To succeed on a motion for preliminary injunction, which it has not yet made, Remy would have to satisfy the well-established criteria for equitable relief *pendente lite*. And, if Remy prevails in the arbitration at The Hague and requires a permanent injunction from this Court in aid of the award, ¶ 12(b) recites the parties' agreement that such a remedy may be pursued.

That construction brings subparagraphs 12(a) and (b) into harmony with each other, and avoids any tension or inconsistency. As for the choice-of-law provision in ¶ 11 of the contract, it represents the parties' agreement that the merits of the disputes will be decided by reference to New York law, thereby implementing the provision in the ICC arbitration rules that the parties are free "to determine the law to be applied by the arbitrator to the merits of the dispute."

No case decided under the FAA or the Convention supports Remy's interpretation of the arbitration agreement. That is not surprising, since that interpretation has a distinctly negative impact upon the arbitrability of disputes, in contravention of federal public policy.

Even if, as Remy argues, New York law as designated in ¶ 11 controls the construction of the arbitration provisions in ¶ 12, Remy is no better off, because it cites no New York case supporting its construction and the duplicative, wasteful proceedings which that construction would allow.

The Court's function, of course, is not to set policy but to enforce the parties' agreement. Arbitration is and must be consensual. But in the case at bar, where the parties disagree as to the proper construction of their agreement, the Court must resolve the issue, in the light of public policy and accepted principles of construction. Having performed those functions, and for the reasons set forth above, I grant the defendants' motion, and make the following Order:

1. Plaintiff is directed to submit the claims set forth in the complaint in this action to arbitration at The Hague.

2. Further proceedings in this Court are stayed; provided, however, that plaintiff may if so advised apply for preliminary injunctive relief in a manner consistent with this Opinion.

3. This Court will in any event retain jurisdiction over the case in the event that any party is advised to move for post-arbitration relief.

4. In the interim, the Clerk of the Court is directed to place the case on the Suspense Docket.