**ORGANIZING COMMITTEE FOR the 1998 GOODWILL GAMES, INC.,**
Petitioner,

v.

**GOODWILL GAMES, INC., Respondent.**

Civil Action No. 95–1969 PLF.

United States District Court,
District of Columbia.

Nov. 15, 1995.

H. Alan Young, Young, Goldman & Van Beek, Alexandria, VA, Neal M. Goldman, Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, New York City, for petitioner.

William Alan Mullins, Washington, DC, John J. Dalton, Troutman & Sanders, Atlanta, GA, for respondent.

### OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

This contract dispute is before the Court on petitioner's petition to compel respondent to arbitrate several disagreements related to a contract between the parties and petitioner's motion for an injunction against respondent terminating the contract prior to the completion of the arbitration proceeding. A hearing was held on November 8, 1995.

Having fully considered the terms of the contract, petitioner's memorandum, respondent's opposition, petitioner's reply and the affidavits and exhibits filed by the parties, and having provided counsel ample opportunity to argue their positions in open court, the Court grants the petition to compel arbitration and petitioner's motion for an injunction.

## I. *BACKGROUND*

Goodwill Games, Inc. ("GWG"), is the owner of the Goodwill Games, an amateur sports event involving world class athletes in Olympic style competition. In 1992 it chose the New York metropolitan area as the site for the 1998 Goodwill Games. It then entered into a fully integrated contract with the Organizing Committee for the 1998 Goodwill Games, Inc. ("OCGG"), the 1998 Goodwill Games Agreement, whereby OCGG would organize and plan the 1998 Games. *See* Pet.'s Ex. A and ¶ 30. The term of the Agreement was to begin on the date of its execution and last until December 31, 1998, or beyond if necessary for completion of the parties' obligations. Pet.'s Ex. A at ¶ 25.

Paragraph 14 of the Agreement provides in part:

All claims, disputes and other matters in question between the parties arising out of, or relating to, this Agreement (all "disputes") shall be resolved by arbitration. . . .

\*　　\*　　\*　　\*　　\*　　\*

14.4　To assure that all disputes between the parties arising from this Agreement are resolved in a manner which is least disruptive to the conduct of the Games, the parties agree, to the extent possible, to continue performance of this Agreement during any arbitration proceedings, and to cooperate in expediting such proceedings.

Pet.'s Ex. A at ¶¶ 14, 14.4.

In the last several months, the working relationship between GWG and OCGG has deteriorated. On October 13, 1995, GWG notified OCGG of its intention to terminate the Agreement within 30 days of OCGG receiving the letter. GWG stated in the letter that OCGG was "in material breach under [the] Agreement . . ." and had 30 days under paragraph 15 of the Agreement to either cure the breach or provide reasonable assurances that it could perform its obligations. Pet.'s Ex. J.

As authority for its right to terminate the Agreement, GWG cited paragraph 15 which provides:

In the event either party is adjudicated a bankrupt; becomes insolvent; makes an assignment for the benefit of creditors or has a trustee appointed to manage its affairs . . . is in material breach hereunder at any time, and such party fails to cure such breach within thirty days . . . following its receipt of written notice to cure from the other party, the other party may terminate this Agreement effective immediately. Such termination shall be in addition to all other rights and remedies that the non-breaching party may have had hereunder or at law or in equity, it being agreed that all rights and remedies whether expressed herein or arising hereunder are cumulative. . . .

Pet.'s Ex. A at ¶ 15. While invoking paragraph 15 and maintaining that there has been a material breach, in its papers and at oral argument GWG also cited paragraph 4.23 of the Agreement, which it argues permits it to unilaterally terminate the Agreement for any reason and without cause. That provision states:

Notwithstanding any provision in this Agreement, . . . if GWG cancels the Games or this Agreement for any reason, GWG shall make liquidated damage payments to OCGG as follows [setting forth schedule]. . . . Notwithstanding the foregoing, if GWG cancels the Games, and such cancellation is due solely to an uncured breach of this Agreement by OCGG, GWG shall not have liability under this Section 4.23. . . .

Pet.'s Ex. A at ¶ 4.23.

In response to GWG's October 13 letter, OCGG sent a Notice of Request for Arbitration on October 17, 1995, pursuant to paragraph 14 of the Agreement. On October 19, 1995, it filed this action seeking to compel arbitration and to obtain an injunction against the termination of the Agreement. GWG argues that its right to terminate the Agreement with or without cause exists independently from its obligation to arbitrate disputes. The only issue relevant to the matter before the Court that GWG agrees is subject to arbitration is whether or not the termination was for cause, that is, whether OCGG materially breached the Agreement. GWG argues that the materiality issue relates sole-

ly to the question of whether OCGG is entitled to actual damages after arbitration under paragraph 15, not to its own right to terminate the Agreement.

## II.  DISCUSSION

### A.  Motion To Compel Arbitration

■■■  "[T]he arbitrability of the merits of a dispute depends on whether the parties agreed to arbitrate that dispute...." *First Options of Chicago, Inc. v. Kaplan,* — U.S. —, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995) (and cases cited therein).  GWG and OCGG agree that a determination whether a party is in material breach of the Agreement is an arbitrable dispute.  The Court concurs; the question whether a breach of the Agreement is material is clearly a "dispute[ ] [or] other matter[ ] in question between the parties arising out of, or relating to, [the] Agreement."  Pet.'s Ex. A at ¶ 14.  The real disagreement between the parties is whether the decision to terminate the contract with or without cause is itself arbitrable.[1]

■■■  Respondent argues that paragraph 15, which gives a party the right to terminate the Agreement "effective immediately" if the other party is "in material breach," permits termination to take effect immediately if the terminating party simply states that a material breach has occurred (assuming compliance with the notice and cure provisions of the contract).  The contract is terminated, maintains respondent, at that moment in time, subject to an after-the-fact determination by an arbitrator whether there was in fact a material breach.  Respondent further maintains that if the arbitrator rules that there was a material breach, the non-breaching party is entitled to actual damages under paragraph 15 but not to specific performance of the contract.  Its bottom line is that all

issues are arbitrable under paragraph 15 except the decision to arbitrate itself.

Petitioner's interpretation of the Agreement, by contrast, is that the trigger to the right to terminate is the current existence of a specific state of affairs—a party being "in material breach."  Under its view, an arbitrator must determine that a party "is in material breach" before paragraph 15's right to terminate is activated.  According to petitioner, the use of the phrase "effective immediately" in paragraph 15 means only that the termination right, qualified by the notice and cure requirements, arises when the arbitrator makes a determination of materiality or when the non-terminating party fails to demand arbitration in a timely manner under paragraph 14.1.

The Court concludes that petitioner's reading of paragraphs 14 and 15 is the more rational and the only one that would not place these two paragraphs in clear conflict.  Petitioner's interpretation not only comports "with the sound principle of construction to interpret a contract so that all its provisions dwell in harmony with each other," *Remy Amerique, Inc. v. Touzet Distribution, S.A.R.L.,* 816 F.Supp. 213, 217 (S.D.N.Y.1993), but corresponds with the plain language of the Agreement.  The language means what it says, namely, that "all ... disputes and other matters in question between the parties ... relating to this Agreement (all 'disputes') shall be resolved by arbitration."  The Court concludes that termination for any of the reasons set forth in paragraph 15, or for any other reason, by definition is a "dispute" within the meaning of paragraph 14 and therefore is arbitrable.

Respondent's interpretation, on the other hand, would render the arbitration provision of paragraph 14 meaningless; it would permit a party to bypass arbitration and proceed directly to termination of the entire agree-

---

1.  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, applies to cases such as this one that involve interstate commerce.  Section 4 of the FAA makes enforceable an agreement to arbitrate.  9 U.S.C. § 4.

Because this case is before the Court on diversity grounds, the Court applies the District of Columbia's conflict of laws analysis to determine what state has the strongest governmental inter-

est in the application of its law to the case.  The Agreement was negotiated and entered into in New York, and the Goodwill Games are to take place principally in New York.  The Court therefore applies New York State contract law.  *Hatzlachh Supply Inc. v. Moishe's Electronics, Inc.,* 828 F.Supp. 178, 181–182 (S.D.N.Y.1993), *order vacated on other grounds,* 848 F.Supp. 25 (S.D.N.Y.1994).

ment simply because it unilaterally claims that there has been a material breach. The existence of such a right would thwart the parties' intent to make "all ... disputes ... relating to [the] Agreement" subject to arbitration. "Courts have long insisted that contracts may not be interpreted ... so as to frustrate and distort the intentions of the parties." *Bense v. Interstate Battery System of America, Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (quoting *Mailer v. RKO Teleradio Pictures, Inc.*, 332 F.2d 747, 749 (2d Cir.1964)).

Petitioner's reading also makes more sense than respondent's in light of the fact that the only other situations in which termination is specifically authorized are when "either party is adjudicated a bankrupt; becomes insolvent; makes an assignment for the benefit of its creditors or has a trustee appointed to manage its affairs...." Pet.'s Ex. A at ¶ 15. Each one of these contingencies is a definite event, occurrence or transaction, the existence of which does not depend on the unilateral perception or determination by either party. It would be inconsistent in a contract with a term of several years to list such specific, objective triggers to the termination right and at the same time to permit termination if a party simply believes that the other is in material breach. The Court concludes therefore that the decision to terminate under paragraph 15 is arbitrable under paragraph 14.

■ Respondent has another arrow in its quiver. Respondent argues that it did not have to invoke the "material breach" language of paragraph 15 and give petitioner an opportunity to cure within 30 days at all, because paragraph 4.23 gives it the entirely separate and independent right to terminate the Agreement for any reason or for no reason at any time, and that this decision is not subject to arbitration. Indeed, it argues that even if petitioner now cured the alleged breach or if the arbitrator ultimately ruled in petitioner's favor, respondent could terminate the contract the very next day under paragraph 4.23 for any reason (or no reason) whatsoever—an argument with a troublesome "heads, I win; tails, you lose" quality.

Paragraph 4.23 provides that "[n]otwithstanding any provision in this Agreement,

... if GWG cancels the Games or this Agreement for any reason, GWG shall make liquidated damage payments...." This provision imposes a contingent obligation on GWG to pay liquidated damages to OCGG if GWG terminates the Agreement notwithstanding any other obligations, procedural or substantive, that GWG may have under other paragraphs of the Agreement. It does not, however, add to the agreed upon reasons for which GWG can terminate the Agreement and cannot logically be so construed. Nor does it provide a separate reason for termination or an exemption from the language of paragraph 14 that "all disputes" are arbitrable. The term "for any reason" merely describes the contours of the contingency that will lead to an obligation to pay liquidated damages. It means that no matter what the reason for GWG's decision to terminate the Agreement, whether it be pursuant to paragraph 15 or not, GWG will incur liability for liquidated damages *in addition* to any other obligations it may have by virtue of its breach. Paragraph 4.23 is a liquidated damages provision (or perhaps a cancellation fee provision), not a separate termination provision.

To interpret paragraph 4.23 otherwise would render arbitration a hollow right, the designation of a fixed term to the Agreement meaningless and the enumeration of specific triggers to the termination right (as well as the notice and cure provisions) a waste of time. Respondent's interpretation of paragraph 4.23 as providing an independent right to terminate, separate and apart from the specific termination provision of paragraph 15, simply makes no sense.

In sum, the Court concludes that there is an agreement to arbitrate "all disputes," that the materiality of an alleged breach falls within the scope of that Agreement, that arbitration concerning that issue must precede any termination of the contract, and that the issue of termination is itself an arbitrable dispute under the Agreement that is governed by paragraph 14. The Court therefore concludes that petitioner is entitled to an order compelling respondent to proceed to arbitration. *See Hatzlachh Supply Inc. v.*

*Moishe's Electronics, Inc.,* 828 F.Supp. at 181.

### B. Request For Injunctive Relief

■ Petitioner also requests the Court to enjoin termination of the Agreement until after the conclusion of the arbitration. It relies on paragraph 26 of the Agreement which provides that "notwithstanding the provisions of paragraph 14 hereinabove, both parties agree that GWG or OCGG may seek mandatory injunctive relief and specific performance of this Agreement in any court of competent jurisdiction in the event of a material breach or threatened material breach by either party." It also relies on paragraph 14.4, the arbitration clause that the Court already has determined applies to the parties' dispute. Paragraph 14.4 states that "the parties agree, to the extent possible, to continue performance of this Agreement during any arbitration proceedings, and to cooperate in expediting such proceedings." Pet.'s Ex. A at ¶ 14.4.

Respondent concedes that paragraph 26 permits a party to seek injunctive relief, but argues that injunctive relief is not available in the case of termination. There is nothing in either the language or structure of the Agreement that would lead one to conclude that paragraph 26 is limited in this manner. Respondent also argues that the words "to the extent possible" apply only to a situation where the relationship between the parties is ongoing and some minor dispute is sent to arbitration, not when the Agreement itself has been terminated. There is no logic to this position. It is "possible" to continue performance of the Agreement during the arbitration proceedings, and that is what the Agreement requires. Pet.'s Ex. A at ¶ 14.4.

■ Petitioner's request for a *status quo* injunction pending arbitration is grounded in the words of the Agreement, both paragraph 14.4 and paragraph 26. Thus, petitioner must satisfy the traditional equitable standards for specific performance rather than the test for preliminary injunctive relief. *Nemer Jeep–Eagle v. Jeep–Eagle Sales Corp.,* 992 F.2d 430, 434 (2d Cir.1993); *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468, 471 (2d Cir.1980). "[M]ainte-

nance of the status quo pending arbitration relates in a substantial way to the performance of the agreement," and particularly its arbitration provision. *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d at 468. As the obligation to maintain the *status quo* depends on the invocation of the right to arbitrate under the Agreement, it is part of the agreement to arbitrate and can be enforced under the contract pursuant to the FAA. *See Nemer Jeep–Eagle v. Jeep–Eagle Sales Corp.,* 992 F.2d at 434; *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d at 472. Paragraph 14.4 requires the continuation of contract performance "to the extent possible . . . during any arbitration proceedings." The plain meaning of paragraph 14.4 is that the contract is to remain in effect and be performed pending the completion of arbitration.

■ Under New York law, in order to obtain a *status quo* injunction requiring specific performance pending arbitration, petitioner must also show that it has no adequate remedy at law and that the equities balance in its favor. *Guinness–Harp Corp. v. Jos. Schlitz Brewing, Co.,* 613 F.2d at 473. As to adequacy of legal remedies, the Agreement itself states that each parties' "services . . . are unique and any material breach hereof cannot be adequately compensated in money damages alone." Pet.'s Ex. A at ¶ 26. Petitioner asserts that the sole reason for its existence is to serve as the host committee for the 1998 Goodwill Games. Mintz Affidavit at ¶¶ 2, 23. Although paragraph 4.23 of the Agreement provides a right to "liquidated damages," the Court reads that paragraph to be more in the nature of a cancellation fee and not a true liquidated damages remedy. A reading of the entire Agreement demonstrates that liquidated damages are not intended to be the sole or exclusive remedy for a material breach of the Agreement. *See supra* at 7–8. In these circumstances, the Court finds that premature termination of the Agreement (possibly without cause) would cause OCGG irreparable harm for which it would have no adequate legal remedy. *Guinness–Harp Corp. v. Jos. Schlitz Brewing, Co.,* 613 F.2d at 473.

In addition, the Court finds that the equities balance in petitioner's favor. There would be no possibility of reinstating the Agreement if it were terminated by GWG before the arbitration proceeding concluded and if the arbitrator later determined that the termination was without cause. The only impact on GWG if the termination is delayed is that it cannot contract with a new organizing committee and it must expend money under the existing Agreement. The fact that GWG cannot seek new organizers, however, results directly from the Agreement that it negotiated with OCGG. As to the potential for financial loss, OCGG will be required to post a bond for the payment of any costs and damages that may be incurred or suffered by GWG if GWG ultimately is successful in proving in the arbitration that OCGG is in material breach. *See* Rule 65(c), Fed. R.Civ.P.

### III. *CONCLUSION*

In view of the foregoing analysis, it is hereby

ORDERED that petitioner's petition to compel arbitration is GRANTED. Within ten days of this Opinion and Order respondent shall provide petitioner with a list of ten potential arbitrators with the qualifications specified in paragraph 14 of the 1998 Goodwill Games Agreement. Within 10 days thereafter, the parties shall agree on an arbitrator. If the parties cannot agree on an arbitrator, the Court will select one in order to implement the Agreement and this Order. The parties shall commence arbitration within 30 days of choosing an arbitrator; it is

FURTHER ORDERED that petitioner's motion for injunctive relief is GRANTED. Specific performance of paragraph 14.4 of the 1998 Goodwill Games Agreement is ORDERED; the parties shall continue their performance of the 1998 Goodwill Games Agreement during arbitration proceedings and cooperate in expediting such proceedings; it is

FURTHER ORDERED that, within 10 days of this Opinion and Order, respondent shall submit to the Court an estimate of its costs and damages as it may incur or suffer in the event that GWG is found to have been wrongfully enjoined or restrained. *See* Rule 65(c), Fed.R.Civ.P. Within five days after receiving respondent's submission, petitioner shall respond to respondent's estimate. A reply, if any, may be filed within three days thereafter. The Court will order petitioner to post a bond in the appropriate amount for the security of GWG; and it is

FURTHER ORDERED that petitioner having obtained all the relief it requested and to which it is entitled, and subject to the Court retaining jurisdiction relating to the posting of a bond by petitioner and any claims against that bond, this case is removed from the docket of the Court.

SO ORDERED.